Gary Ehrman on behalf of Petitioner. I respectfully request four minutes of rebuttal time. I'd first like to start by saying it's a true honor to be present in front of this panel today and my pleasure as a lawyer. It's a pleasure having you. Thank you. This is a obviously this is a case where there are items with respect to a motion to reopen that perhaps were not considered. How did you obtain the letter from Lanshan Village? The respondent's mother went to the village, asked for the letter. It's commonplace in these types of cases since the person is in the United States and they cannot have direct officials. They'll ask a family member, father, mother, or sibling to go to the village and say I need information regarding what happens to people who have children born outside of China and returned to China. And Article 5 of the family planning law gives the village authorities to implement the law, the national law, of the one-child policy. So the village authorities do have, the So what we have to look at now, stepping back, is the test. The test for whether the presentation of documents justifies reopening is whether they are previously unavailable and whether they are sufficiently material to establish an alien's eligibility for relief. This language is clear and it's unambiguous and we're required to give a plain meaning. So what we need to do then is look at a piece of paper and draw a line down the middle. In 2000, the respondent was ordered removed from the United States. What documentation, what material was available at that time regarding the family planning policy? The other side of the line is 2007 when the respondent filed the motion to reopen. What material is available at that time? Do you have to do that? The BIA has a ruling that, as I understand it, really makes three points. And I'm talking about the November 28, 2008, ruling of Judge Polley. He talks about the affidavit, personal affidavit, being unpersuasive. He talks about her friend's affidavit, also not of the villagers who were allegedly forcibly sterilized, parents of children born outside of China. And three, we afford little evidentiary weight to the copy of the purported letter from the local family officials. Finally, it goes on to refer to the remaining documents, which he says are cumulative and duplicative of documentation evaluated in our recently published decisions and we declined to revisit them. Isn't that the ruling that we need to be focusing on? Aren't those the parts, the specific parts of the ruling that we need to be focusing on? That's exactly true and what we need to do is start off, that is our starting point. Number one, the personal affidavit that the respondent submitted. This court has ruled that affidavits in context of motions reopened are supposed to be given the benefit of doubt since the they're deemed to be true unless they're implausible. So that was an improper reason of abuse of discretion, arbitrary and capricious for the judge, the BIA judge, to deny on that first reason. Let me stop you for a second, counsel. So then you would focus on the fact that he found the petitioner's personal affidavit unpersuasive. He's not accepting it as true then and neither is he finding that it's inherently implausible. He just says it isn't probative enough. Unpersuasive. That is applying the wrong legal standard. Is that your point? Exactly, your honor. It's an abuse of discretion because they're applying a standard that's not appropriate. Unpersuasive. That is, that's really not an argument that could be presented to a review in court and with any substance to say whether or not you think it's unpersuasive or not. That's a Number two, the judge on the BIA found that the friend's letter. I have a question about the friend's letter. What village did the friend live in? The same village. I thought... The same county, excuse me, the same county. She's, the petitioner's from Blanchard Village, right? Correct. And the friend is from Changle? Correct, Changle. And how far apart are they? This is within a half hour of each other. And how about the third lady? The same county. Han, where is she located? It's also within the same county. But not in the same village as Zhang? Correct. Okay. But both, both the women are from the same county and which is in the same province of Fuzhou. So the BIA, Fuzhou province, the BIA found the friend's letter was not persuasive because it didn't deal with children born outside of China. However, if you look at the record, and I can cite to the page, there's plenty of evidence that indicate that children born outside of China are counted the same as children born inside of China as long as the parents are Chinese citizens. 2006 administrative decision of the Fujian province, their government body said the exact same thing. Now this document is different than what the BIA found in the case of SYG, because that Fujian province administrative decision was from 2003 that discussed government employees. I thought your strongest piece of evidence was actually the village committee's letter that says in the penultimate paragraph, quote, since you have no legal status in the United States, you, Ms. Chang, are still a citizen of China, not classified as overseas Chinese. That's exactly correct. And you have to look at that letter. And that's the same thing that the AFI in Hawaii said. Once you come back to China, U.S. children will be registered as Chinese citizens and you'll be required to undergo the same family planning procedure as all local residents. Correct. So then when Judge Pauli uses the fact that the kids were born in America and under U.S. law are considered U.S. citizens, that's really not relevant. It's not how we would consider this citizenship. It's how the Chinese authorities would consider citizenship. Exactly. Not only is it not relevant on Judge Michelle, but it's not supported by any evidence in the record. None. This is just a arbitrary and capricious finding that the BIA judge found for some reason in order to deny this application. The BIA is not making findings here, are they? Well, they're... We're at a motion to reopen. The role of the BIA really is to make threshold determinations pursuant to a motion to reopen. Right. With respect to whether proffered evidence is sufficient to warrant further consideration, right? Yes, sir. But in that context... So let me take you back then to the personal affidavit. What's wrong, what's legally wrong with the determination by the BIA that the affidavit is not persuasive because it is not based on personal knowledge? Isn't that a legal determination? It's a legal determination that is not in... It's not consistent with this court's ruling in Guo in 2004 when this court said that only in a motion to reopen, you're only required to establish that there's a reasonable likelihood, which was defined as there's a reasonable chance. A reasonable chance, as the Supreme Court has said in Cardozo-Franceco, is a 1 in 10 chance. So by the... Yeah, but the Ninth Circuit says 1 in 10. Clearly, it's not 50. But I would doubt you could find anyone on this court that's going to get you as low as 10%. I'll give you that, Judge. It might be in the neighborhood of, let's say, maybe a third, 40%, who knows? Understood. A reasonable chance. We can all define that pretty much the same way. Is one of your points that the affidavit from the second lady, Huang, I believe is her name, corroborates with some specifics the secondhand assertion of the petitioner herself? And therefore, it's a little questionable for Judge Pauly to throw out as not probative the petitioner's affidavit because it's corroborated. Correct. And it's corroborated by several documents. So if we look at everything in the totality, I think the BIA erred by saying that if you look at all these documents together, including the country report, including the affidavits, including the Fujian Province family planning law, that if you look at everything together, there is a reasonable chance. And therefore, the BIA is required to send the case back to the judge to develop the facts in front of the fact finder. How is this case different from Lew? Lew. L-I-U. You're talking about the 2006 Lew? Yes. I believe so. If I may. I'm sorry, 2009. 2009. Is that the Third Circuit or Second Circuit Lew? It's our case. Your case. Well, it's actually not that different from the Third Circuit case. All right. Didn't it involve, didn't Lew involve an administrative office letter that was similar to the village notice in this case? Yes. But what we need to do is we have to look at the Zhang decision, which another panel decided in 2008, the Third Circuit, which basically stated that the BIA cannot just cite. We know what Zhang says. Let me ask you about what I have a real question. Okay. That's the ultimate statement by Judge Polly in his adjudication, which refers to the remaining documents. And that's as far as it goes in the characterization. The remaining documents and a characterization of them that they're cumulative and duplicative of documentation evaluated in our recently published decisions and we declined to revisit them. And it stops right there. Nor is there citation to what any of those earlier decisions were. Is that enough? Yes. Is that enough for us? It is. Is that enough for our review purposes? No, it's not enough. It's not enough for them to, for this court to uphold. Exactly. If you're in our position, do you know what he's talking about? I have no idea what he's talking about. I find it arbitrary and capricious. Doesn't he seemingly say in three other cases with different factual records, but similar documents to some of the documents here, we found it wasn't enough, therefore it can't be enough here. And your answer to that is, well, we have a lot more evidence in this case than in those three cases, so the result might well be very different. Significant amount of evidence sets in addition. And this is in 2007. And I don't want to speak outside the record, but we're 2010. So the record is even doubled because the evidence just trickles out of China. And if we can send this case back to the immigration judge, we'll have the opportunity to develop the records and the facts and all the evidence. Well, Judge Pauly says the final sentence of his penultimate paragraph, we also find that the respondent has failed to demonstrate a prima facie eligibility for protection under the Convention Against Torture. Now, I'm reading the word, admittedly, reading the word also to mean we find no prima facie case under the other two theories either. Now, I guess your argument is, well, if the documents have to be accepted as stating a prima facie case unless they're inherently implausible, then he's wrong in saying there's no prima facie case. Yes, that's correct. I'll reserve a few minutes for rebuttal. That's fine. We'll get you back for rebuttal. Thank you. Mr. Inglis. May it please the Court, John Inglis for the United States. Your Honor, the Court should deny the petition for review because Petitioner failed to carry a heavy burden of proof. It's a heavy burden, but here's the point. It looks like what was considered was the affidavit by John, the affidavit of her friend, Ms. Wong, and a third thing, which was the letter from the village committee of Lanshan Village in the township of Longjiang County. Now, what they didn't consider, and I can't figure out why, although I guess they call it cumulative, duplicative, et cetera, and purportedly they've considered these types of things before, the 2006 State Department report, no mention of that, the Xin Fuqian letter, which is in Appendix 316 to 328, the March 2006 policy statement from the Administrative Office of China's National Population and Family Planning Committee, and the Guangtao-Linjiang County in Fuzhou Province family planning document, also the Longtai Village family planning operation propaganda regulation, and the Fuzhou Province fine schedule. There's six items there, and maybe you could argue they didn't have to consider all of them, but boy, that's an awful lot. I don't think it's – I think the board considered what the board was supposed to consider in this case, Your Honor. None of these documents – You mean the most powerful pieces of evidence supporting the petitioner don't have to be addressed by the judge in deciding the case? The board considered those documents that were argued by the petitioner before the board, and those are the same documents that were argued – How do we know that? Mr. Yerman referred us to our Zheng decision, and I'm curious to know how you would distinguish Zheng. There we determined that the BIA, in deciding two motions to reopen that, in my view, are similar to the motion we have here to reopen, abused its discretion by failing to adequately consider all the evidence submitted by the petitioners. What's the difference between this case and Zheng? The Zheng decision, Your Honor, was a decision by the board, which was common for a little while, where they basically said we are going to affirm for the same reasons cited to in some of the precedential decisions. Well, we have language here that talks about remaining documents being cumulative and duplicative of documentation evaluated in our recently published decisions, and we declined to revisit them. What's that tell us? That is similar language to Zheng, Your Honor. Where we reversed, where we sent it back to the BIA. That's correct, Your Honor. However, the court in Liu, which is a case that Your Honor asked opposing counsel about, this is a case that's more similar to Liu, where the court commented on the critical evidence in the record, the evidence that's actually personally tailored to the petitioner. And then on the other evidence that was not specifically perhaps raised in the record, then they cited these documents. Let me be clear. We know that motions to reopen are not to be filed willy-nilly, but on the other hand, we need to have before us a suggestion that BIA or the IJ, as the case may be, wherever the motion to reopen has been filed, has considered what has been brought to their attention by a petitioner. And I'm curious to know what you would read into evaluated in our recently published decisions if you were this panel. What should we take that to mean? I think that in those decisions, the – What decisions? You're thinking it might be Zheng, but that doesn't help you. So what other decisions might help you? Well, the board on page 3 of the record, page 2 of the decision, specifically references – if the court's asking which decision, specifically references SYG, JWS, and CC. So I think that those are the three decisions from the board that the board is referencing in that – in its decision. Speaking only for myself, it may be very easy for you to prevail ultimately in this case, but reading what we have right now, it's difficult for me to know just what the BIA considered of the documents that were presented to them and how they considered them in connection to specific decisions of their own. I think that there's two important points I want to make, Your Honor. The first is that many of these documents were not argued administratively. Petitioner's brief to the board is contained in the record. Their motion to reopen is contained in the record. The vast majority of the – Yeah, but a lot of the things that I just read to you that weren't considered were presented. Well, but they're presented, Your Honor, in a list, in a list format. They presented 13 documents to the board. They presented 10 documents to this court. And there's almost no argument with respect to any of those documents on page 12 of the petitioner's brief.  Mm-hmm. There is language in documents from officials. There is statements of friends that if you come back here, there is a – you will be treated like any other Chinese citizen. Your two children will be considered to be Chinese citizens. They will register for school. You will be subject to family planning. And that includes sterilization. And in light of the law that we have in this country, I mean, that's pretty interesting information. And it would seem that that does give a reasonable likelihood – you don't need 50 percent, and I agree it's not 10 percent – but a reasonable likelihood that something's going to happen. And if I were in Ms. Jiang's shoes here, I would be awful worried that someone was going to try to sterilize me. I can't say what she'd be worried about, Your Honor, but she's not presented a prime official case, and that is what comes before the court here. A prime official case, is there a reasonable likelihood that this could happen? Are you telling me there's not a reasonable likelihood that that may happen? Based on the record before the court, that is the government's position, yes, Your Honor. Well, let me ask you about this. Our decision in Shardar requires, quote, that facts presented in the motion to reopen are accepted as true unless inherently unbelievable. Now, do you agree that that's the standard, that the facts presented in her motion to reopen have to be accepted unless they're inherently unbelievable? That's correct, Your Honor, and there's no – then how does the opinion of Judge Pauly establish inherent unbelievability of the facts in the key document? In trying to evaluate whether or not to establish a prime official case, Your Honor, he goes through the documents and evaluates their persuasiveness. I'm trying to get you to respond to what seems to be the rule of the road here, which is that Judge Pauly was required to accept as true all the facts alleged in the motion to reopen, accept those facts he can show to be inherently unbelievable. But then when you look at his opinion, I don't see that he shows anything to be inherently unbelievable, but maybe I've missed something that you can point out. Okay, starting with Petitioner's affidavit. And they don't say inherently unbelievable, by the way. They just say it's cumulative, duplicative, et cetera, and it's been covered elsewhere. But I don't think anybody, including the BIA, thinks that these documents are necessarily inherently unbelievable. I mean, the only argument you might have is that why didn't they have the original of one document? Why did they have a copy? But that's just one of the documents. And besides that, you can still, under the particular Code of Federal Regulation rule, you can submit a copy as long as it's authenticated. But the three main documents that are reviewed in this decision, Your Honor, if you go through them, Petitioner's affidavit, the board says that it's unpersuasive because it lacks personal knowledge. Yeah, yeah, but unpersuasive isn't the same thing as inherently implausible. But basically what the board is saying is that there was a lot of evidence that they didn't consider that no one of us in this room believes is inherently unreasonable or implausible. We don't even know what it is. Yeah, that's even worse. Your Honor, there's, I mean, Petitioner attaches over 40 documents to the motion to reopen. Most of these documents are not argued before the board. And I was going to raise that point earlier just in a kind of cautionary way. I certainly do not mean to imply by any of my questions, and I don't think this court would suggest that if the petitioner doesn't somehow relate those documents in his application, in his petition, and suggest how they help him, the board isn't under an obligation to do his work for him, which is to say no one has a right to come in and just perform a document dump and say go through this stuff and determine how it helps me and how it doesn't. But here we have the court not saying that, rather the BIA not saying that. We have the BIA acknowledging that it has remaining documents and going so far as to suggest that it has somehow taken those documents into consideration. We just don't know in what way. In fact, we don't even have anything more specific than the characterization, the remaining documents. Doesn't the BIA owe us something more than that for our review purposes so that we know what they're talking about, and therefore so we know whether a document is cumulative or duplicative or both, and so we know what recently published decisions they're referring to? I don't think that the board needs to go through each of the 41 documents if there's not been any argument with respect to the documents. I just said that. I gave you that one. I know. But when they say that, I mean, at the top of page, I'm sorry, Your Honor, I'm trying to work with the court on this. But they do reference certain of the documents. They say that there's news articles. They reference documents from the United States and the Canadian governments. And basically what the board's obligation was to establish was to determine whether it was a prima facie case based on the evidence and the argument that was presented to them. They discounted certain of the documents. They discounted Huang's letter to the extent that it – Here's the point. You may win in the end. They may deny the motion to reopen for whatever reason. But you've got to – you have to go through a certain process. If they put before you relevant information that gives one a suspicion that she will be sterilized if she goes back, and we've determined in this country, Congress has, that that is a reason that we will not have someone go over, isn't there a – you have to consider and you have to explain why it is that that relevant evidence causes you not to exercise your discretion. Now, and you've got to do it in a way so that we can review it. And I think what you're hearing us say, and I think Judge Smith has said it two or three times, is when you say that something's duplicative, when you say it's cumulative, when you say it's been covered elsewhere, and we ask you, for example, on the elsewhere, and you cite a decision that's actually in Mr. Yerman's favor, we don't have a clue as to how to review this. Doesn't this really have to go back for a redetermination by the BIA? I hope I didn't cite a case in Mr. Yerman's favor. I was citing the board's decisions in SYG, JWS, and CC. You mentioned Jim. I mentioned Liu, Your Honor, and mentioned trying to get to the difference between the two. I think this case is very similar to the court's holding in Liu last year, looking at the nature of the board's decision. I think you've got three people telling you that that's a different case with different facts. Let me ask you about this. There's a critical line, at least I think it's critical in Judge Pauly's decision, near the bottom of page two. It's about six or seven lines up, and it's referring to the village committee's letter. And it says that the letter, quote, does not demonstrate a reasonable likelihood that the respondent would be forcibly sterilized. And then there's some other language that's not relevant. So it says it does not demonstrate the likelihood that the respondent would be forcibly sterilized. But then when you look at the letter itself from the village committee, do you have that in front of you? Yes. It says our village strictly implements the regulations of population and family planning of Fujian Province, semicolon. Any citizen of China who gives birth to one child will be the target for IUD insertion, semicolon. Citizens with two children will be targets for sterilization. Then it goes on to say, since you have no legal status in the United States, you are still a citizen of China not classified as an overseas Chinese. Pursuant to Article V of the National Law of the People's Republic of China, once you come back to China, your U.S.-born children will be registered as Chinese citizens, and you will be required, to undergo the same family planning procedures as all local residents, i.e., citizens with two children forcibly sterilized. How can you square Judge Pauly's characterization of this letter with the text of the letter itself? It's a short five-sentence letter, Your Honor. The letter does not actually say that she's going to be forcibly sterilized. If you were in her shoes, do you think there's a reasonable likelihood that she might be? I don't think it was an abuse of discretion, Your Honor, for the Board to come up with this decision. If you were in her shoes, do you think there's a reasonable likelihood that she might be if she goes back? Your Honor, I don't think that the record in this case compels that conclusion. I'll let you off the hook on that one. You argue in footnote 13 on page 32 of your brief that the clincher here for your side is that the word targeted for sterilization isn't defined. They don't say by target we mean we will come and pick you up and take you to the hospital and drug you and sterilize you. But in the context of this letter, what else could it mean? Does the word targeted have to be defined before somebody has a reasonable expectation that it's likely to happen to them if they go back to China? If that's the one piece of evidence in this case, Your Honor, that specifically has her to persecution, yes. And she needs more. Targeted would have to be defined in the village's letter? She needs a more specific. She needs more evidence. I mean, to say that it's an abuse of discretion for the Board to come to this conclusion. What other evidence does she need? Perhaps relevant statistics from the province that she's from. She has one letter from one friend who the letter says it's from the same town. Council says it's from different towns. One could make an argument that this is the gold standard. You've got the officials telling you this is what's going to happen. I mean, what better evidence can you possibly get? I mean, most officials say, no, not necessarily do that. And, you know, we might do a fine or something, and we've got a family planning problem. But, no, we've really been lax in a few years. But this is like, come on back and guess what's waiting for you. I don't think that this establishes even SYG, where you need to establish a change of country conditions. I mean, this is an untimely motion to reopen. Her burden in this case is more than just to establish to produce one letter. If she can show change of country conditions, she gets around the untimeliness. But she hasn't shown trunk. I mean, there's no evidence that establishes that. It doesn't have to establish. It merely has to show a reasonable likelihood, some chance that she might prevail. Anyway, thank you. Thank you. Mr. German, do you really have anything to add? Very little. Appellate advocacy 101 in Canon 9 is split while you're ahead. Exactly. I just wanted to read you one thing, and I completely agree. Just to show you the arbitrariness of this decision, where the board said that the original letter wasn't submitted. BIA practice manual chapter 3.3D4, which was published in 2004, states that the board strongly recommends that parties submit copies of supporting documents, not originals, unless instructed otherwise. The Immigration Service Department of Homeland Security has the ability to do forensic on original documents, not BIA. That's why we don't send BIA. Okay. Thank you very much. It's been an honor. Thank you. I take the matter under advisement.